## WELSH, DRISCOLL & BUCK v. BUCK.

No. 4127.   Decided January 5, 1925.   (232 Pac. 911.)

1. ACCOUNT STATED—EVIDENCE HELD TO SUPPORT FINDING OF AC-
COUNT STATED BETWEEN CLAIMANT CORPORATION AND DECEASED.
Evidence *held* to support finding of existence of account stated
between claimant corporation and deceased.

2. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD TO SUPPORT
FINDING OF DEBT TO CLAIMANT CORPORATION FOR GOODS PUR-
CHASED.   Evidence *held* to support finding of indebtedness
owing by deceased to claimant corporation for goods purchased.

3. EVIDENCE—ACCOUNT ON LOOSE-LEAF LEDGER HELD ADMISSIBLE IN
SUPPORT OF CAUSE OF ACTION AS BEING ORIGINAL ENTRY.   Ac-
count as it appeared upon loose-leaf ledger made from triplicate
charge slips *held* original entry, and admissible in support of
cause of action alleged.

4. ELECTION OF REMEDIES—MISTAKE IN PURSUING REMEDY NOT BAR
TO INSTITUTION OF ANOTHER PROPER ACTION.   A mistake in pur-
suing a remedy is not a bar to bringing of another proper ac-
tion.

5. ELECTION OF REMEDIES—JUDGMENT DISMISSING FORECLOSURE
SUIT AGAINST ESTATE FOR WANT OF EQUITY HELD NOT TO BAR AS-
SERTION OF CLAIM IN PROBATE COURT.   A judgment in a fore-
closure suit against an estate dismissing the suit for want of
equity, because the instrument sued on as a mortgage was
not such in fact, *held* not to bar assertion of such claim in
the probate court, especially where the suit was dismissed
without prejudice to so present the claim.[1]

6. EXECUTORS AND ADMINISTRATORS—TESTATOR MAY APPOINT AS
EXECUTOR PERSON OTHERWISE DISQUALIFIED.   A testator may
appoint as executor a person who might otherwise be disquali-
fied to so act.

7. EXECUTORS AND ADMINISTRATORS—ON PROOF OF WILL, DUTY OF
COURT TO ISSUE LETTERS TESTAMENTARY TO PERSON NAMED AS
EXECUTOR ON HIS APPLICATION.   On proof of will, it is the duty
of the court to issue letters testamentary to the person named
as executor on his application.

---

[1] *Howard* v. *Paulson Co.*, 41 Utah, 490, 127 P. 284; *Welsh, Dris-
coll & Buck* v. *Buck*, 48 Utah, 653, 161 P. 455,

8. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD TO SUPPORT FINDING PRESENTATION OF CLAIM WAS MADE IN DUE FORM AND WITHIN TIME PRESCRIBED BY LAW. Evidence *held* to support finding that presentation of claim by corporation was made in due form with respect to verification, and within the time prescribed by law. Comp. Laws 1917, §§ 6466, 6467, 6474, 7648, and 7653.

9. EXECUTORS AND ADMINISTRATORS—ADMINISTRATOR NOT DISQUALIFIED TO ACT AS SUCH WITH RESPECT TO CLAIM AGAINST ESTATE BY CORPORATION IN WHICH HE WAS STOCKHOLDER. An administrator *held* not disqualified to act as such or as executor under will with respect to claim against estate by corporation in which he was stockholder.

Appeal from District Court, Third District, Summit County; *G. A. Iverson*, Judge.

Action by Welsh, Driscoll & Buck, a corporation, against W. J. Buck, executor of the estate of William J. Wilson, deceased. Judgment for plaintiff, and defendant appeals from an order denying new trial.

AFFIRMED.

*Walton & Walton*, of Salt Lake City, for appellant.

*W. I. Snyder*, of Salt Lake City, for respondent.

ERICKSON, District Judge.

The plaintiff (respondent herein) brought this action against the defendant (appellant herein) to recover upon two causes of action: (1) Upon an account stated for $6,958.61 alleged to have been due in September, 1918; (2) for goods, wares and merchandise amounting to $836.97 on September 1, 1918, for which demands judgment was prayed.

Defendant's answer whereupon issues were joined denied that there was anything due from defendant to the plaintiff; also claimed that a proper claim was never presented to the

said executor in that it was not duly verified; or that it was ever presented at all by reason of the alleged personal interest of the said executor in the claim.

Certain provisions of the Comp. Laws of Utah 1917, were pleaded as a bar to the action, viz., sections 6466, 6467, 6474, 7648, 7653, and 7665. Laches was also pleaded.

It was also pleaded in the said answer that plaintiff had previously expressly waived all recourse against the general assets of said estate, and was therefore estopped from maintaining this action for the reason, as alleged, that on the 18th day of December, 1915, and the 13th day of February, 1917, in the district court of Wasatch county, in a certain action between the plaintiff herein and Henry Welsh as plaintiffs, and William J. Buck as executor of the estate of William J. Wilson, deceased, and Medora Wilson Moline as defendants, for the same cause of action as set forth in the complaint herein, judgment was duly given and made that plaintiffs take nothing by their said action, and that the title to all the real estate belonging to said estate and claimed by plaintiff herein to be the subject of the alleged mining partnerships should be and was quieted in the said defendants as against each and every claim of said plaintiffs.

Upon the issues as thus joined in this action the case was tried to the district court of Summit county without a jury, resulting in a judgment in favor of the plaintiff for the full amount sued upon, and from an order denying defendant's motion for a new trial this appeal is prosecuted.

The assignments of error relied upon for a reversal of this action, as presented in defendant's brief, are as follows: The evidence fails to prove that there was an account stated; that plaintiff failed to establish its second cause of action; that plaintiff has waived all right to pursue the general assets of the estate; that there was no legal presentation of any claim against the estate, and that plaintiff is barred by the judgment of the district court.

The evidence, briefly stated, is to the effect that the plaintiff, a corporation, is now, and for many years last past has been, engaged in general merchandising in Park City, Utah, and

that for several years prior to December 31, 1911, one William John Wilson, a miner by vocation, lived at Park City and was engaged in the working and development of certain mining properties in that vicinity, and that practically all his supplies for his own use and for working at the mines were purchased from the plaintiff. A running account between the plaintiff and the said William John Wilson had been carried on for quite a number of years.

The evidence also shows that the plaintiff employed what is known as the Elliot-Fischer Billing Machine system of book-keeping, which consisted of sales slips in triplicate made by the clerk waiting on the customer, of which copies were sent to the office for approval, and when approved the merchandise was delivered to the customer, either in person or by delivery team, together with the original sales slips. Those retained were held until night, and then turned over at the office, and next morning segregated and charged to the accounts of the different customers in the loose-leaf ledger made in duplicate. Each month a copy of the said ledger account was forwarded to the various customers who had accounts with plaintiff.

The evidence further shows that the said William John Wilson, along about or a few days prior to December 31, 1911, had complained to the manager of the said plaintiff that there were errors in his accounts as it appeared that certain charges were made in his personal account that rightly belonged to the accounts of two certain mining companies, viz., the Agathos Mining Company and the South Boulder Basin. Thereupon the manager suggested that Wilson bring to the store all of his statements and meet with Agnes Harrington, one of the employés of the plaintiff who had such matters in charge, and have the same rectified. On or about December 31, 1911, the said William John Wilson appeared at Plaintiff's store, having in his possession all monthly statements pertaining to his personal accounts and also the monthly statements pertaining to the account of the mining companies. The evidence shows that he had carefully gone over these accounts, and had written upon a piece of paper the charges in his personal account which belonged to one or the other

of the mining accounts. These charges were handed to Miss Harrington. He read them from the statement, and she added them on the adding machine. They were checked back again, and the statement was shown to Wilson, who thereupon stated that that was satisfactory and everything had been properly credited.

Plaintiff's Exhibit A herein, which was identified by the witness Harrington and received as evidence in this case, dated December 31, 1911, represented as the personal account of William John Wilson, shows first a debit of $8,620.58, and then follow certain credits which the witness testified had been erroneously charged to said personal account. Such charges belonged to the one or the other of the mining companies. After these charges had been deducted the account showed a balance due from Wilson to the plaintiff in the sum of $1,142.43.

The evidence also shows that plaintiff's Exhibits C and D, being the accounts of the Agathos Mining Company and the South Boulder Basin, respectively with the said plaintiff, disclose the fact that the amounts which had been charged to the personal account of Wilson and thereafter deducted appear as charges in the respective accounts of the mining companies as shown by Exhibits C and D, and they were the same as had been credited on Wilson's personal account.

The evidence further shows that Wilson owned a one-fourth undivided interest in the mining claims of said companies, and that the remaining three-fourths thereof were owned by William J. Buck and Henry Welsh, respectively. Wilson, being a one-fourth owner in the properties, was therefore liable for one-fourth of the operating expenses, of which he had had personal charge and had personally ordered all of the goods and supplies and moneys required for the operation of the property.

The evidence further shows that on July 22, 1912, the said William John Wilson died at Park City, Utah, and on March 15, 1913, William J. Buck was appointed administrator. Later on, on or about January 14, 1914, a last will and testament of the said William John Wilson having been dis-

covered, the same was duly admitted to probate and William J. Buck and Henry Welsh, who were named in said will as executors were appointed as such by the court. Henry Welsh declined to act. William J. Buck qualified as such executor, and has continued to administer said estate ever since said day.

The evidence also shows that notice to creditors of said deceased was first published on May 10, 1913, in which notice claims were required to be presented to the administrator on or before September 13, 1913.

The record further shows that on September 2, 1913, the plaintiff presented its claim against the estate of said decedent for the sum of $7,427.72, said claim having erroneously included certain charges, to wit, $98.25 paid out after the death of decedent on the Boulder Basin group; $25.13 for taxes on Utah Stars; also $33.20 for taxes on Boulder Basin group, and $138 for land on Utah Stars.

In this claim, after the items and the total, the following appears: "Said claim being secured by a deed to Henry Welsh, manager of the said Welsh, Driscoll & Buck." The verification is as follows:

"State of Utah, County of Summit, ss.:

"Henry Welsh, manager of Welsh, Driscoll & Buck, the above-named claimants, whose claim is herewith presented to the administrator of the estate of said deceased, being first duly sworn, deposes and says that the above amount, to wit, the sum of $7,427.72, is justly due and owing to said Welsh, Driscoll & Buck, and that there are no payments made thereon which are not credited, and that there are no offsets to the same to the knowledge of affiant."

This claim was presented to the administrator, William J. Buck, on September 2, 1913, and allowed for the full amount as appears from the indorsement upon the said claim.

We hold that the evidence is sufficient to support the court's findings in favor of the plaintiff upon its first cause of action, for the reason that it appears that the parties connected with the said account stated met for the purpose of going over the same and that their minds met upon the credits and the charges in said accounts set forth and the balance that remained owing to the plaintiff by William John Wilson.

Now, as to the sufficiency of the evidence to support the findings of the court in favor of plaintiff upon its second cause of action. The evidence of the cashier and the bookkeeper of the plaintiff shows their system of bookkeeping to have been as hereinbefore described. The witnesses were employés of the plaintiff. They personally had charge of the bookkeeping system, and were well acquainted with Wilson, and knew personally of the transactions for the sale of the goods between January 1, 1912, and August 1, 1912. They testified that Wilson had personally called for his monthly statements of the account. All of this goes to support the court below in finding for the plaintiff upon its second cause of action. We think there is no question but that the account, as it appeared upon the loose-leaf ledger, made in the manner aforesaid from the charge slips, constituted an original entry so as to entitle it to be received as evidence in support of the cause of action alleged.

We are convinced there was no waiver in this case. Defendant contends that the bringing of the action by plaintiff and others in the district court of Wasatch county and the judgment of the said court, pleaded in the answer, constituted a bar against the bringing of this action. This contention is well answered by this court in the case of *Howard* v. *Paulson Co.,* 41 Utah, 490, 127 P. 284, in which case the plaintiff brought his action against the administrators to foreclose a lien, and thereafter voluntarily dismissed it. In the action pleaded by defendant herein plaintiffs sought to establish and foreclose a supposed mortgage and failed, whereupon the action was dismissed for want of equity. That case was appealed to this court. *Welsh, Driscoll & Buck* v. *Buck,* 48 Utah, 653, 161 P. 455. While the judgment of dismissal was affirmed, this court in the course of the opinion, said:

"That disposes of plaintiff's claims so far as a court of equity is concerned. Plaintiffs may not have recourse to a court of equity for the purpose of establishing their claims against the decedent's estate. To do that they must go into the probate court. Our probate courts are created for that purpose; and in view that we are forced to hold against plaintiffs' contention that the deeds in

question were intended as mortgages, there remains nothing for us to do except to dismiss the complaint, without prejudice, however, to plaintiffs' right to establish their claim in a probate court, and, when so established, to subject the property of the estate to the payment of such claims. * * *"

The plaintiffs had erroneously taken the view that they held a mortgage, which they sought to establish and foreclose and thereby satisfy their claim. There is ample authority to the effect that, where a mistake has been made in the pursuance of a remedy, such mistake is not a bar to the bringing of another proper action. See note to *Fowler* v. *Bowery Sav. Bank,* 10 Am. St. Rep. 489; 20 C. J. p. 21.

Now as to the further contention of defendant to the effect that no proper claim has ever been presented to the administrator or executor by plaintiff as required by law, by reason of an alleged defective verification to the claim presented, and also for the further reason that the executor, who was a stockholder in the plaintiff corporation at all times herein, and for that reason had an interest in the claims to such an extent that it disqualified him: The evidence shows that Henry Welsh was manager of the plaintiff corporation at the time and prior and subsequent to the presentation of the claim, and that William J. Buck, administrator and executor herein as aforesaid, prior to his appointment as administrator and after, and during the presentation of the claim, and at all times herein, was a stockholder of the plaintiff corporation. While we do not hold that William J. Buck was disqualified for such reason, yet the evidence further shows that when the last will and testament was made and executed decedent knew that Henry Welsh and William J. Buck, whom he appointed in his will as executors thereof, were the principal owners of the said plaintiff corporation and were officers of the same. It is well settled in law that the testator has the province of appointing his own executors, and that a person who might otherwise be disqualified can properly be appointed. This doctrine is supported by the following authorities: *Smith's Appeal,* 61 Conn. 420, 24 A. 273, 16 L. R. A. 538. In 23 C. J. 1023, it is stated:

"Where the will is proved it is the duty of the court to issue

Appeal from Second District

letters testamentary to the person named as his executor upon his application."

We are of the opinion that a claim in due form of law was presented to said administrator within the time prescribed by law, and the court did not err in so finding; and we further hold that William J. Buck was not disqualified by reason of his being a stockholder of the plaintiff corporation, and that he was properly appointed and qualified as administrator, and later as executor of the last will and testament of said decedent.

It appears from the evidence that the district court of Summit county, on the 30th of July,. 1918, disallowed the claim without prejudice as to the merits or right to sue. Within three months after that disallowance this action was commenced.        **8, 9**

For the reasons given we hold that the lower court committed no error in its findings, conclusions, and decree entered herein in favor of the plaintiff. Judgment is affirmed.

WEBER, C. J., and GIDEON, FRICK, and CHERRY, JJ., concur.

THURMAN, J., did not participate herein.